And we'll turn to the next case on our day calendar, which is the United States of America v. Brian Gomez. Good morning. I'm Matthew Brissenden, and I represent Mr. Gomez on this appeal. With the Court's permission, I wanted to start out with the issue of the duration of the stop and whether or not it ran afoul of the Supreme Court's recent decision in Rodriguez. I think it's undisputed that the primary purpose and the intention of the stop was to investigate an ongoing narcotics investigation. And, in fact, if you look at what actually happened once the stop was effectuated, it's clear that the majority of the time was spent doing precisely that. In fact, the district court recognized that Mr. Gomez was questioned about subjects which were unrelated to his purported traffic violations, and essentially that those — that questioning did extend or prolong the stop. However, it reasoned, relying upon this Court's holding in Harrison, that the stop wasn't unreasonably prolonged. But at the time Judge Hall made her decision, Rodriguez hadn't been— It actually had been, Your Honor. Rodriguez had been law for two months at the time of the decision. I think it came out in April, and the decision was rendered by the district court in June. So Rodriguez— At the time of the arrest, Harrison was law of the circuit. That is correct, Your Honor. That is correct. And that goes— Why wouldn't it be good faith on their part? Right. It followed the Rodriguez case back to the Eighth Circuit, and on remand, the Eighth Circuit concluded that good faith applied because it had not been decided that, similar to a Harrison situation, it was in the Eighth Circuit. So how could the agents know? I mean, why doesn't—and that was the court of appeals that said, we say good faith applies here. Why wouldn't we conclude the same here? Of course, Your Honor. Obviously, that's going to be one of the central questions here, I think. That's why I asked it. What's the answer to it? The answer is this case is distinguishable from Rodriguez in the sense that we have argued that the government waived the good faith exception by not raising it in the district court. In Rodriguez, there was no issue of waiver because the issue wasn't ripe when it was before the district court. But it wasn't raised in Rodriguez, either, was it? It wasn't raised in Rodriguez because it wasn't ripe. Obviously, when the case was in the district court in Rodriguez, Rodriguez, the Supreme Court case, wasn't law. And so there was no basis for the government to raise the good faith exception in the district court. Unlike this case, where Rodriguez was good law, the government certainly could have argued at the time when the case was before the district court that the good faith exception applies. Whether it was a strategic decision or simply an oversight, the government's position was consistently not that the good faith exception applies, but that the officer's conduct was lawful and appropriate here. And so I've cited to a number of circuit cases, both Worry from the First Circuit and Lehrer from the Ninth Circuit, which hold under similar circumstances when the government has this argument available but doesn't advance it in the district court, it's effectively waived, Your Honor. Well, did you folks brief Judge Hall on Rodriguez? You know, so the defense counsel raised the precise legal issue, but you're correct, Your Honor, to observe that defense counsel never cites in the papers Rodriguez directly. Well, how can the government waive something that, I mean, there's a change in the law here. Well, I don't understand how you get a waiver of something when you've had a change in the law from the time of the arrest to the time of the final justification on the motion to suppress. Well, so the scenario was by the time that the second hearing took place, Rodriguez was already law. And you're correct, Your Honor, defense counsel, although he's advancing the exact argument that's covered by Rodriguez, somehow neglects to cite Rodriguez itself. How can you blame the government? Well, I — How can you say that the government's waived the good faith argument when you didn't make the argument that Rodriguez was the determining factor here with regard to understanding Harris and its comparison, its continued application to the analysis? My argument, Your Honor, would be that Rodriguez was certainly available equally to both sides. I think both sides had an obligation to be aware of that development. You're right. And good faith's out the door. The district court — I'm going to read to you what the district court said. The district court found that Gomez doesn't contest. That's my statement. Quote, the traffic stop lasted five minutes at most. It doesn't say it extended it. It says the traffic stop lasted five minutes at most. That's Gomez at three. You're talking about a five-minute traffic stop, and you're talking about a fellow driving a vehicle that previously was stopped and found with $10,000 worth of cocaine in it that he had picked up at another location after he drove his white car to that location and then went to a hotel and stayed briefly at a hotel and walked out of the hotel with a duffel bag. That sounds like reasonable suspicion to me, which, by the way, is a mixed question of So, I mean, seriously, the traffic stop's five minutes. You don't like the credibility determination made with regard to the officer and the traffic violations were done. But we know that Wren says that he could have a reason to stop him other than the traffic violations. That's okay. Justice Ginsburg wrote that. And you've got this guy's driving a car that previously had $10,000 worth of cocaine in it. He should have used a different car. So how is that not reasonable suspicion that perhaps the car carrying this large duffel bag that came out of a hotel in which he stopped only for a few minutes after switching cars at another location that was a drug location, that there's not some reasonable suspicion that that car has got cocaine and or drug proceeds in it? I think I want to clarify, Your Honor. I'm not certain that I heard you correctly. But I believe the facts were that a year, about a year prior, the car had been stopped and there was a large amount of cash found in it, not a large amount of cash. $10,000. It was more than that, Your Honor. In all frankness, it was more than $10,000, I believe. Oh, okay.  I understand. But my point is this, Your Honor. Does a stop... That doesn't sound a little bit suspicious to you. What I would say is this, Your Honor. I don't carry around more than $10,000. I wish I could in a duffel bag in the back of my car. What a great problem to have. What I would say, Your Honor, is that a stop which took place a year prior doesn't create an open-ended reasonable suspicion for the government to stop the vehicle whenever they like. You drive your white car to a location where a known drug dealer resides. You then switch cars. You go to a hotel. You stay for a very brief period of time. You don't carry any bags in. But you come out with a duffel bag. And now you're in this car. You switch cars and you're driving and then you violate the law. You don't think that a police officer might say to himself, you know, that seems suspicious beyond, you know, that fits a pattern that I've seen before? Your Honor, I'm getting a sense we might disagree about the subject, but obviously my position is that it was not reasonable suspicion. Okay. All right. You would agree that it's a mixed question, law and fact? I do agree with that, Your Honor. Let me say one thing about reasonable suspicion. And certainly, Your Honor... Reasonable suspicion? That Your Honor is focusing on the events which occurred leading up to the stop, which is one thing. What troubles me in part about a lot of the government's argument is that the government focuses in particular on events that occurred later in the stop. For instance, this notion that Mr. Gomez changed his narrative about whether he was staying in the hotel or why he was there. And I'm concerned about that reasoning in particular because I don't think you can So I certainly would argue that that reasoning regarding reasonable suspicion is suspect in this case, and this Court shouldn't rely on that because there's sort of a bootstrapping or circularity to the argument, Your Honor. You've reserved a couple of minutes, Mr. Brissenden. Would you like to use them now or do you want to come back? I'll save them. Thank you. Mr. Stone. Good morning, Your Honors. My name is Jeff Stone. I represent the United States in this appeal. The district court properly ruled and properly denied the motion to suppress in this case. The defendant's challenges to the district court's ruling lack merit. I'm going to focus my comments initially on the duration of the stop, as that seems to be the primary focus of my colleague. And my colleague in his papers and before the Court appears to focus on the Supreme Court's decision in Rodriguez.  State it differently. The stop in this case complied with the mandate of Rodriguez. The investigators in this case did not prolong the stop. Well, the district court relied on Harrison, but also cited longer intervals of Turvin 14 minutes and Hernandez 17 minutes. Do you think those three cases, including Harrison, survived Rodriguez? But wasn't she responsible for or the district court responsible for making findings about being able to prolong the stop? Certainly, as Judge Wesley points out, there probably was a lot there for those findings to be made by the district court, but they weren't. So there's two questions. Was the district court wrong in saying that Harrison and these other two cases were still good law after Rodriguez? And the second is, did you need findings about prolonging the duration of the stop in order to sustain the appeal on that basis? Addressing your first question, Your Honor, to the extent that Harrison stands for the premise that a stop can be prolonged beyond the time that the officers need or reasonably should have needed to conduct the traffic stop, to process the traffic stop, and there's no reasonable suspicion of illegal activity or another independent basis for the stop, then I believe the Rodriguez case abrogated the decision in Harrison and the other decisions that Your Honor alluded to. In this case, significantly, it's the government's contention that the stop fully complied with the mandates of Rodriguez. And so one question – the second question, Your Honor. The length of the time? Five minutes? Your Honor, for a couple of reasons. One is issues or information relevant to the narcotics investigation were developed during the course or simultaneous with the traffic stop. Moreover, and possibly more importantly, at the inception of the stop, the officers had specific and articulable facts that provided reasonable suspicion to believe that Mr. Gomes was involved in illegal activity. Didn't the district court have to make that finding? The district court did not make that specific finding, Your Honor. However, the record – there's ample evidence in the record, uncontroverted evidence in the record, establishing this reasonable suspicion. It's unconscionable to argue good faith, too, like in Rodriguez on the remand to the Eighth Circuit. Are you still maintaining that even if the district court should have made those additional findings, and understandably may not have given the recency of Rodriguez and that neither the government or the defendant had raised Rodriguez in its briefing? Because as I understand it, the briefs were filed when Judge Burns had the case previously and they weren't updated. So in other words, Judge Burns has the case, she retires, case gets transferred to Chief Judge Hall, and she holds the suppression hearing again, but no new briefing. So it's understandable that she wouldn't have had the benefit of Rodriguez-type briefing. Wasn't that the right scenario? That's correct, Your Honor. Due to the unique scenario of this case, the parties briefed this case well before the hearing before Judge Hall. In fact, the parties briefed this case before Judge Hall was assigned the case. And before Rodriguez was decided. And well before Rodriguez was decided. As a result, unfortunately, Judge Hall did not have the benefit of both parties' briefing of the Rodriguez case to further develop the case. Now, while she did cite to Rodriguez, she didn't address it in great detail. She did, however, cite it for the proposition and to support her finding that the inquiries by the officers regarding the heroin trafficking activities did not measurably prolong the stop. She said at three, quote, There's no evidence on the record to contradict testimony by Detective Campbell and Special Agent Schatz that the stop lasted five minutes at most until Gomez was arrested. Based on the record before it, the court finds that while Gomez was questioned about matters unrelated to the traffic violation during this time period, such questioning did not unreasonably prolong the stop so as to render it unconstitutional. I mean, it's five minutes and she says it didn't prolong it. You know, the slip up with, she actually cites Rodriguez. She makes a citation to Rodriguez in the same paragraph. And she says the court finds the process was reasonable in time and the officers unrelated inquiries did not, quote, measurably extend the duration of the stop, end quote, Rodriguez. It's five minutes. It happened quickly. They went right from the traffic violation right to the drug offender. It was probably because of what they'd seen. But that's not inappropriate for them to do that. That's certainly consistent with the government's position, Your Honor. Could you talk about good faith, though, too? The opposing counsel said you didn't raise it and so you waived it. But I know you argued good faith in your brief, Mr. Stallworth. Did you forfeit it or waive it? Your Honor, the government's position was that issue was not right before the district court. Neither party, due to the unique circumstances of this case, provided any briefing after Rodriguez was issued. As a result, it wasn't raised by defense and it wasn't addressed by the government. If it had been addressed in the brief, then quite likely the government would have raised a good faith argument. Why do you say it wasn't right? Maybe that's not the right word, Your Honor. But the unique circumstances were that the parties briefed this while Judge Burns had the case. And then she retired before a ruling was issued. And then Judge Hall took the case. And Rodriguez's decision came down, I believe, in April of last year. And then Judge Hall's decision was, I believe, in June or July of last year. So a couple of months after the Rodriguez decision. No further briefing was requested by the parties. And, quite frankly, it just wasn't on the parties' radar. We very likely should have briefed it. Both parties should have addressed it so we could have fleshed out issues under Rodriguez before Judge Hall. But, unfortunately, we didn't. Now, once again, Judge Hall did cite to Rodriguez to support her findings in this case, findings that, according to Judge Hall, the stop was constitutionally reasonable. But tell me again why you think this stop complied with Rodriguez. I think for a couple of reasons, Your Honor. One reason is, unlike Rodriguez, there wasn't an instance where the traffic stop was completed and then the stop was extended in Rodriguez for an additional seven or eight minutes. In this case, information that heightened or escalated the officer's reasonable suspicion was developed at the very onset of the stop while the routine traffic stop process was being pursued by the officer. What was the first thing that the — Specific. Pardon? Specific. Specifically. When Detective Campbell approached the vehicle, he testified that Mr. Gomes appeared nervous. He was visibly shaking. He wouldn't look Officer Campbell in the eye. He kept looking forward. He kept his car running. He had his hands on the steering wheel. Detective Campbell had to ask him two times to turn off the vehicle. Then, during the initial questioning, where Detective Campbell testified he was asking routine questions, the defendant lied to him. Or, at the very least — Didn't he say to him that we pulled you over because of the heroin? Pardon, Your Honor? Wasn't that one of the — if not the first thing, one of the first things he said, we pulled you over because of the heroin? He said that very early in the communication. I believe he testified, Your Honors, that he asked some routine questions, one of which was, where are you coming from? And the defendant falsely said, I was coming from home. Well, Detective Campbell knew that the defendant had — was not coming from Hartford in an eastbound direction. He was actually coming in a westbound direction from a hotel, the very hotel where Detective Campbell observed some highly suspicious activity. Knowing full well that hotels are commonly used by heroin traffickers. Once he complied and shut the vehicle off, he again asked me why he had been stopped. This is Campbell's testimony. I told him that we were conducting an investigation into bad heroin as well as firearms within the city of Hartford. He didn't say, you ran a couple stop signs, you were swerving on 84, you were going too fast. All right? So what's the purpose of that? Your Honor, I think the purpose of that is Detective Campbell was jointly investigating two matters, the motor vehicle violation and the narcotics investigation. And he was doing them simultaneously during the course of the motor vehicle violation. And, yes, he certainly asked those questions right at the onset. I believe he also testified he asked what he characterized as more routine traffic questions, including one of them being, where are you coming from? And at each point during the motor vehicle stop, his suspicions escalated to the point that their reasonable suspicion went to probable cause during the course of the motor vehicle stop. Why did he ask him where he was coming from since he was under surveillance the whole time? I believe. He surveilled him since Sisson Avenue, right? From Sisson Avenue to the house to the Ramada Inn, he was under constant surveillance that whole time. So why would you ask him, where are you coming from? Your Honor, I think it's twofold. I think Detective Campbell characterized it as a routine question that he would typically ask during the motor vehicle stop. And I also think the other reason to ask the question is, quite frankly, he believes that Mr. Gomes was involved in illegal activity. He was trying to trip him up so he would have a more solid basis to search the car. Duh. And that may very well be true, Your Honor. It's not unconstitutional, but, you know, we were all born at night, but we weren't born last night. Do you have anything else you want to say, Mr. Stone? Your Honor, if there are no further questions, then I'll rest on the papers. Thank you. Mr. Brissenden, you have a couple of minutes. Just very briefly, I know the government raised an issue that perhaps this case is distinguishable from Rodriguez in the sense that in Rodriguez the dog sniff occurs after the ticket has been issued. In this case, the period of delay occurs before the ticket is issued. But to the extent that there's not reasonable suspicion. There was no ticket issued, though, right? What's that? There was no ticket issued. There was no ticket issued at all, right, which was the Catch-22. You know, you can't leave until I issue your ticket, but I'm not going to ask you any questions about the ticket. Instead, I'm going to ask you all these questions. You don't claim that the five-minute finding by Judge Hall is wrong. They're clearly erroneous. Here's what I. . . You read it. You heard me read it, didn't you? I did, Your Honor, but I want to focus on the exact language, right? What Judge Hall said is that the stop wasn't unreasonably prolonged, right, Your Honor? No, she said it lasted five minutes. She said the entirety. . . She didn't say it prolonged it. She said it lasted five minutes. She said the entirety of the stop was five minutes. Right. And that it was not unreasonably prolonged. And now that focus on unreasonably is consistent with this Court's decision on Harrison. But my argument is under Rodriguez, the question isn't was it unreasonably prolonged, was it a de minimis extension of the stop. The question is, was it prolonged, period? Was it measurably extended? And in this case, it certainly was. As Judge. . . I assume it was, then. What do you do with the reasonable suspicion? Well, obviously, my position here, Your Honors, I've tried to articulate, is that there was no reasonable suspicion. And one of the things I want to emphasize here is that upon effectuating the stop, if you listen to the tapes, they're saying the whole time, we've got the brother, we're following the brother. The moment they stop Mr. Gomez, they come back and they say, oh, it's not the brother, it's Brian Gomez. Well, the fact that they got the wrong guy doesn't mean that the activity that the wrong guy did wasn't suspicious. Well. . . You can't. . . The law doesn't allow you to parse out individual facts and say, well, that's an innocuous  But you have to put them all in the context of what they observed. But it does make a difference, Your Honor, if the officers here believe they're pursuing a particular player in this conspiracy they're investigating, and they effectuate the stop and find out it's not the person they thought they were following at all. You don't think the activity performed by John Doe, if it's performed by John Doe, is not suspicious? I think when you have a person with no criminal history going to a hotel. . . He goes into a hotel briefly after switching cars, after having stopped at a known drug location. You're not telling the whole story here. The law requires you to tell the whole story, not just part of it. You can't parse it out. Parts of it may be innocuous. But the question is, what is it as a whole? And so he does that. Then he goes to a hotel and he stays a few minutes. He comes out with a duffel bag, puts it in the back of the car, and takes off. That's correct, Your Honor. There might be several ways to interpret that, but if one of them is a reasonable suspicion that perhaps he was engaging in drug activity, it's over. I think that's correct, Your Honor. I think there is no Rodriguez violation if there was reasonable suspicion. Obviously, our position is that there was not. Okay, fair enough. Just one thing before you sit down. Is it not true that the record contains all the information necessary to make a determination as to whether the good faith exception does or does not apply? It is. I mean, I think it's a mixed question of fact and law. But that may be the case, Your Honor. What may be the case? It may be the case. I mean, obviously, the district court implicitly found that the stop was good under Harrison. So, you know, arguably that would weigh in favor of a finding that there was good faith if the issue had been preserved. Obviously, our argument that it's been waived. Your argument is that it's been waived. Thank you. Thank you.